Tyson C. Horrocks (12557)
Patrick R. Charest (17184)
HOLLAND & HART, LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
tchorrocks@hollandhart.com
PRCharest@hollandhart.com

*Attorneys for Plaintiffs Innovasis, Inc. and Brent A. Felix*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **INNOVASIS, INC.,** a Utah corporation, and **BRENT A. FELIX,** an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**MICHAEL FRANCIS ENGLISH,** an individual, and **RICARDO FONTG**, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. 2:26-cv-511<br><br>Judge _____ |

Plaintiffs Innovasis, Inc. ("Innovasis") and Brent A. Felix ("Felix") (collectively, "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendants Michael Francis English ("English") and Ricardo Fontg ("Fontg") (collectively, "Defendants"), and allege as follows:

### INTRODUCTION

This action arises from English's post-settlement breaches of contractual obligations, Fontg's breaches of fiduciary duty as Innovasis' retained general counsel, and Defendants' conspiratorial conduct that caused Innovasis and Felix catastrophic financial harm, including a $12

million federal False Claims Act settlement, a $15 million emergency loan, and the forced sale of Innovasis' and Felix's assets.

English served as President, and self-appointed head of compliance, for Innovasis from approximately January 2017 through May 31, 2019. During that period, English upon information and belief negotiated and signed physician agreements that violated the Anti-Kickback Statute ("AKS") (Criminal penalties for acts involving Federal health care programs), 42 U.S.C. § 1320a-7b(b), in order to maximize his own growth-tied compensation. To facilitate this scheme, English hired an attorney friend, Ricardo Fontg, as retained general counsel specifically to provide a compliance rubber stamp on those agreements. Fontg approved the physician agreements as compliant without conducting independent legal analysis, breaching his fiduciary duties of loyalty and independent judgment to Innovasis.

When the improper agreements were discovered through an external compliance audit in 2019, English attempted to extort approximately $2.5 million in severance from Innovasis by threatening to file a whistleblower complaint. When Innovasis refused and self-reported to the Office of Inspector General, Robert Richardson, an Area Vice President from Kansas who appears to have been fed confidential Innovasis information by English, filed a *qui tam* action that ultimately resulted in the $12 million DOJ settlement.

Following the resolution of prior litigation between the parties, English entered into a Confidential Settlement Agreement and Release (the "Settlement Agreement"), which imposed continuing obligations including non-disparagement, confidentiality, and certification of return or destruction of Innovasis materials. This action seeks relief for English's post-Effective Date breaches of those continuing obligations, his ongoing unauthorized use of Innovasis' confidential and proprietary information, Fontg's breaches of fiduciary duty, and Defendants' civil conspiracy.

- 2 -

**PARTIES**

1.      Plaintiff Innovasis, Inc. is a privately held Utah corporation with its principal place of business in Salt Lake City, Utah. Innovasis manufactures, markets, and sells medical devices, equipment, and related products primarily used in spinal surgeries.

2.      Plaintiff Brent A. Felix is an individual residing in Sandy, Utah. Felix founded Innovasis in 2002 and has served in various leadership roles, including as President, Chief Executive Officer, and Chairman of the Board.

3.      Defendant Michael Francis English is an individual believed to reside at 4358 Outlook Ridge Trail, Colorado Springs, Colorado 80924. English is a citizen of the State of Colorado. English served as President of Innovasis from approximately January 2017 through May 31, 2019.

4.      Defendant Ricardo Fontg is an individual believed to reside at 3400 W. 85th St. Leawood, Kansas. Fontg is a citizen of the State of Kansas. Fontg served as retained general counsel of Innovasis during English's tenure as President and beyond.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship). The matter in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs are citizens of the State of Utah. Defendant English is a citizen of the State of Colorado. Defendant Fontg is, on information and belief, a citizen of the State of Kansas. As such, complete diversity exists between all Plaintiffs and all Defendants.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the entirety of Innovasis' operations, English's employment, Fontg's legal services, and the performance and breach of the Settlement Agreement.

7.      English consented to jurisdiction in this District in the Employment Agreement signed on February 5, 2014, and in the Settlement Agreement.

## GENERAL ALLEGATIONS

8.      Innovasis has been engaged since 2004 in the research, development, manufacturing, and marketing of spinal implant devices and related products nationwide.

9.      Innovasis employed English from February 5, 2014 through May 31, 2019. From February 2014 through October 2016, English served as Vice President of Business Development. From October 2016 through January 2017, he served as Executive Vice President. From January 2017 through May 31, 2019, English served as President.

10.     During his tenure as President, English appointed himself as the head of compliance for Innovasis. Innovasis maintained a separate compliance officer for sunshine-law reporting, but English took it upon himself to oversee other compliance matters, including the physician agreements that formed the basis of subsequent government enforcement action.

11.     English's compensation was heavily tied to company sales growth. His compensation proposals provided a salary, an annual bonus tied to quarterly growth targets, and additional commission accelerators.

12.     English hired an attorney friend, Ricardo Fontg, as retained counsel to assist with compliance matters. Upon information and belief, Fontg served in this capacity during English's tenure as President. As retained general counsel, Fontg owed Innovasis fiduciary duties of loyalty, confidentiality, and independent professional judgment arising from the attorney-client relationship. English hired Fontg specifically to review and approve physician agreements as compliant with applicable healthcare law, including the AKS. Fontg approved the physician agreements without, upon information and belief, conducting independent legal analysis, without performing fair-market-

- 4 -

value assessments of consulting fees, without evaluating IP licensing payments for substantive documentation, without analyzing whether registry payment structures were tied improperly to product usage, and without identifying the compliance risks subsequently identified by external healthcare counsel (Hooper, Lundy & Bookman, P.C.) during a 2019 compliance audit.

13.     During the period from January 1, 2014 through December 31, 2022 (the "Covered Conduct Period"), and as set forth in the DOJ Settlement Agreement and alleged, Innovasis provided remuneration to orthopedic surgeons and neurosurgeons to induce them to use Innovasis spinal implants, devices, and other equipment in medical procedures performed on Medicare beneficiaries, in violation of the Anti-Kickback Statute (Ex. A at ¶ F).

14.     The improper remuneration allegedly took the form of consulting fees at rates far in excess of fair market value, intellectual property acquisition and licensing fees without supporting documentation, registry payments tied to product usage, performance shares in Innovasis, travel to a luxury ski resort in Deer Valley, Utah, lavish dinners at high-end restaurants, and holiday parties (Ex. A at ¶ F).

15.     English, in his capacity as President and self-appointed head of compliance, was responsible for negotiating and signing the physician agreements that provided for this improper remuneration. English was upon information and belief motivated to enter into these agreements because they drove surgeon utilization of Innovasis products, which in turn drove the sales growth on which his substantial bonus and commission depended.

16.     In March 2019, Innovasis entered discussions with Sapphire Medical regarding a potential acquisition, which required a compliance audit.

17.	On or about May 1, 2019, English informed Innovasis of his intention to resign. He demanded a severance package of approximately $2,419,268 and indicated, that if Innovasis failed to agree, he would institute a *qui tam* action.

18.	Innovasis refused the severance demand.

19.	At the recommendation of Hooper, Lundy & Bookman, Innovasis self-reported the compliance issues to the Office of Inspector General of the Department of Health and Human Services.

20.	English's employment ended on May 31, 2019.

21.	On October 15, 2019, Robert Richardson filed a *qui tam* action under seal in the United States District Court for the Northern District of Texas, Dallas Division, captioned *United States ex rel. Richardson v. Innovasis, Inc.*, Civil Action No. 3:19-CV-02440-X.

22.	On January 22, 2020, the United States filed a Notice Concerning a Breach of Seal, disclosing a breach of the seal in *United States ex rel. Richardson v. Innovasis, Inc.*, Civil Action No. 3:19-CV-02440-X. Upon information and belief, that cooperating witness was English.

23.	Richardson was an Area Vice President from Kansas. Upon information and belief, English provided Richardson with confidential Innovasis information that formed the basis of the *qui tam* complaint, as evidenced by details in Richardson's discovery responses that could only have been known by English in his capacity as President and head of compliance.

24.	The United States intervened in the Civil Action on October 25, 2023 (Ex. A at ¶ D).

25.	On or about May 20 through 22, 2024, Innovasis, Brent Felix, and Garth Felix entered into a settlement agreement with the United States and Richardson (Relator) (the "DOJ Settlement") (Ex. A), agreeing to pay $12,000,000 plus 4% annual interest (Ex. A at ¶ 1).

26.     As a result of the DOJ Settlement, Innovasis was required to obtain a $15 million loan, secured by its assets as well as the personal assets of Brent Felix, and was ultimately forced to sell its operating assets all but ending the business entirely.

27.     On April 10, 2023, Innovasis filed suit against English and Curiteva, Inc. in this Court, Case No. 2:23-cv-00228 (the "Prior Lawsuit").

28.     In or about February 2025, Innovasis and English entered into the Settlement Agreement resolving the Prior Lawsuit.

29.     The Settlement Agreement imposed continuing post-dismissal obligations on the parties, including obligations requiring English to return or destroy certain materials and requiring the parties to provide written confirmation that confidential materials had been returned or destroyed within thirty days after the stipulation of dismissal was filed.

30.     Since the Effective Date of the Settlement Agreement, English has breached the Settlement Agreement in the following respects as set forth below.

31.     Upon information and belief, English has not provided the required written certification confirming that confidential materials from the Prior Lawsuit were returned. The stipulation of dismissal was filed on or about February 28, 2025, and the certification deadline has expired. Upon information and belief, English has retained Innovasis' confidential materials beyond the required deadline.

32.     Upon information and belief, since the Effective Date, English has used Innovasis' confidential and proprietary business information, acquired during his employment, for the benefit of other competing entities, including Innovasis' customer and surgeon relationship data, pricing and billing strategies, sales methodologies, product development information, and business methods. This

unauthorized post-Effective Date use of Innovasis' confidential information is independent of and separate from any disclosure protected by any federal or state whistleblower provision.

33.    Upon information and belief, since the Effective Date, Fontg has facilitated English's ongoing unauthorized use of Innovasis' confidential and proprietary business information by providing English with access to, or assisting English in the use of, information that Fontg obtained during his service as Innovasis' retained counsel, in violation of Fontg's continuing fiduciary duty of confidentiality owed to his former client, Innovasis.

## FIRST CAUSE OF ACTION
### (BREACH OF THE SETTLEMENT AGREEMENT) (Against English)

34.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

35.    The Settlement Agreement is a valid and enforceable contract between Innovasis and English, supported by adequate consideration.

36.    The Settlement Agreement imposes continuing obligations on English, including obligations concerning the return, destruction, and certification of confidential materials from the Prior Lawsuit.

37.    English has breached the Settlement Agreement as set forth in paragraphs 31 through 33 above.

38.    As a direct and proximate result of English's breaches, Plaintiffs have suffered damages including but not limited to reputational harm, loss of business relationships, remediation costs, and attorneys' fees incurred in enforcing the Settlement Agreement, in an amount to be proven at trial.

39.     This claim arises from the Settlement Agreement's own terms and from post-Effective Date conduct. It does not arise from, relate to, or concern the allegations in the Prior Lawsuit. Accordingly, it is not barred by the release contained in the Settlement Agreement.

40.     Plaintiffs seek injunctive relief pursuant to the Settlement Agreement's express carve-out permitting provisional relief from a court of competent jurisdiction.

## SECOND CAUSE OF ACTION
### (CONVERSION) (Against English)

41.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

42.     At all relevant times, Innovasis owned and had the right to possess the materials designated confidential under the Prior Lawsuit's governing protective order that were produced to or received by English or his counsel during that litigation. These materials constitute Innovasis' personal property.

43.     The Settlement Agreement required English to return or destroy confidential materials from the Prior Lawsuit and to provide written certification confirming compliance within the required timeframe.

44.     On information and belief, the stipulation of dismissal was filed on or about February 28, 2025, and the certification deadline had expired.

45.     On information and belief, English has failed to return or destroy the confidential materials and has failed to provide the required written certification. English has intentionally retained Innovasis' confidential materials beyond the deadline, exercising unauthorized dominion and control over Innovasis' property without consent and in a manner inconsistent with Innovasis' possessory rights. Under Utah law, conversion is any unauthorized exercise of dominion or control over property belonging to another that is inconsistent with the owner's rights. *See Onyx Lifestyle Ltd. v. First Data*

*Merch. Servs., Ltd. Liab. Co.,* 2020 U.S. Dist. LEXIS 154663, at *9 (D. Utah Aug. 25, 2020) (defining conversion as "an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession.").

46.     Upon information and belief, English's retention of Innovasis' confidential materials was knowing and intentional. English entered into the Settlement Agreement with the advice of counsel, was aware of his continuing obligations concerning the return or destruction of confidential materials, and has failed to comply. His continued possession of Innovasis' materials after the contractual deadline is inconsistent with Innovasis' ownership and possessory rights.

47.     As a direct and proximate result of English's conversion, Innovasis has suffered damages including the diminished value of its confidential information, compromised secrecy, remediation costs, and loss of competitive advantage, in an amount to be proven at trial.

48.     This claim arises from post-Effective Date retention in violation of a duty created by the Settlement Agreement. It does not arise from pre-Effective Date document-taking alleged in the Prior Lawsuit and is not barred by the release.

## THIRD CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY) (Against English)

49.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

50.     As President of Innovasis, English owed fiduciary duties of loyalty, care, and good faith to the company and its owners.

51.     English breached his fiduciary duties by: (a) negotiating physician agreements that he knew or should have known violated the AKS, motivated by his personal financial interest in growth-tied compensation; (b) hiring Fontg to rubber-stamp those agreements rather than providing genuine compliance oversight; (c) concealing his knowledge of the compliance risks from Innovasis' owners;

and (d) upon discovery of the noncompliance, attempting to extort $2.5 million in severance rather than cooperating with remediation.

52.     As a direct and proximate result of English's breaches of fiduciary duty, Innovasis suffered damages as set forth above.

## FOURTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY) (Against Fontg)

53.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

54.     As retained counsel for Innovasis, Fontg owed Innovasis fiduciary duties of loyalty, confidentiality, and independent professional judgment arising from the attorney-client relationship. These duties required Fontg to exercise independent judgment in the interest of his client, Innovasis, free from conflicting loyalties; to maintain the confidentiality of information obtained during the representation; and to place Innovasis' interests above his own and above those of any other person, including English.

55.     Fontg's duty of confidentiality to Innovasis as a former client survives the termination of the attorney-client relationship.

56.     Fontg breached his fiduciary duties of loyalty and independent judgment during his tenure as retained general counsel by: (a) prioritizing his relationship with English, the person who hired him and on whom his continued employment depended, over his duty of loyalty to his client, Innovasis; (b) approving physician agreements as AKS-compliant without conducting independent legal analysis, thereby abdicating his duty of independent professional judgment in order to serve English's financial interest in maximizing growth-tied compensation rather than Innovasis' interest in legal compliance; and (c) failing to advise Innovasis' owners of the substantial AKS risks created by the physician agreements he approved, notwithstanding his obligation as counsel to provide candid

- 11 -

34603082_v1

and independent legal advice. The foregoing pre-Effective Date conduct establishes the pattern and course of Fontg's disloyalty to Innovasis.

57.    On information and belief, since the Effective Date, Fontg has breached his continuing fiduciary duty of confidentiality to his former client, Innovasis, by facilitating English's ongoing unauthorized use of Innovasis' confidential and proprietary business information, including information Fontg obtained during his service as Innovasis' retained general counsel. Fontg has provided English, and possibly others, with access to, or assisted English in the use of, this information for the benefit of other competing entities, in violation of Fontg's duty to maintain the confidentiality of his former client's information.

58.    The post-Effective Date conduct described in paragraphs 67 through 69 below constitutes an independent, temporally distinct breach of Fontg's surviving fiduciary duties. It does not arise from or relate to the allegations in the Prior Lawsuit and is not barred by any release, as Fontg is not a party to the Settlement Agreement or any release between Innovasis and English.

59.    As a direct and proximate result of Fontg's breaches of fiduciary duty, including his post-Effective Date breaches of surviving duties of confidentiality, Innovasis has suffered and continues to suffer damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### (UNJUST ENRICHMENT) (Against English)

60.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

61.    On information and belief, since the Effective Date (February 2025), English has received financial benefits, including compensation, profits, and competitive advantages at Curiteva or other competing entities, derived from his post-settlement use of Innovasis' Confidential and Trade Secret Information and from his retention of Innovasis materials.

62.     English's retention of these benefits is unjust and inequitable because they were obtained through the unauthorized use of Innovasis' proprietary assets, in breach of English's contractual and fiduciary obligations, and without Innovasis' consent.

63.     It would be unjust and inequitable for English to retain the benefit of his unauthorized post-Effective Date exploitation of Innovasis' confidential information and property.

64.     Plaintiffs are entitled to restitution of all post-Effective Date gains and to the imposition of a constructive trust on all property, gains, and profits in English's possession or control that are traceable to his post-settlement misappropriation, retention, or use of Innovasis' Confidential and Trade Secret Information.

## SIXTH CAUSE OF ACTION
### (CIVIL CONSPIRACY) (Against English and Fontg)

65.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

66.     Under Utah law, civil conspiracy is a theory of vicarious liability that imposes joint and several liability on all participants in a concerted tortious scheme. The elements of civil conspiracy are: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Nelson v. Pehrson,* No. 2:24-cv-568 TS, 2025 U.S. Dist. LEXIS 184484, at *10 (D. Utah Sep. 18, 2025). A civil conspiracy claim requires the existence of an underlying tort giving rise to liability. *See Id.* at *11 n.40. Here, the underlying torts are English's breach of fiduciary duty and Fontg's maleficence, each independently alleged against its respective defendant.

67.     English and Fontg, acting in concert and pursuant to a common plan, agreed to cause Innovasis to enter into physician agreements that violated the AKS, for the purpose of enriching English through growth-tied compensation and enriching Fontg through continued legal fees and employment.

68.     In furtherance of this conspiracy, English negotiated and signed the improper physician agreements, and Fontg approved them as compliant without independent analysis, thereby providing the compliance cover necessary to perpetuate the scheme.

69.     On information and belief, the conspiracy continued after the Effective Date of the Settlement Agreement, as English has continued to use Innovasis' Confidential and Trade Secret Information for competitive purposes with the knowledge and facilitation of Fontg.

70.     As a result of Defendants' conspiratorial conduct, Innovasis suffered the damages set forth above, but in an amount no less than $75,000.00 to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Michael Francis English as follows:

1.     On Count I, an award of compensatory damages against English for breach of the Settlement Agreement in an amount to be proven at trial;

2.     On Count II, an award of compensatory damages against English for conversion, including the full value of the converted property and all special damages resulting therefrom, in an amount to be proven at trial;

3.     On Count III, an award of compensatory damages against English for breach of fiduciary duty in an amount to be proven at trial;

4.     On Count IV, an award of compensatory damages against Fontg for breach of fiduciary duty in an amount to be proven at trial;

5.     On Count V, restitution and disgorgement of all post-Effective Date gains against English, and imposition of a constructive trust on all property traceable to English's unauthorized post-settlement use or retention of Innovasis' confidential and proprietary information;

6.     On Count VI, an award of compensatory damages against English and Fontg, jointly and severally, for civil conspiracy in an amount to be proven at trial;

7.     On all Counts, an award of prejudgment and post-judgment interest at the applicable legal rate.

8.     On all Counts, an award of costs and attorneys' fees to the extent permitted by law or contract, including under the Settlement Agreement.

9.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.


DATED this 1st day of June, 2026.

HOLLAND & HART, LLP

/s/ Patrick R. Charest
Tyson C. Horrocks
Patrick Charest

*Attorneys for Plaintiffs*


**Plaintiffs' Address**
c/o Holland & Hart LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101

- 15 -