# EXHIBIT A

SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), (collectively, the United States), Innovasis, Inc., Brent A. Felix, and Garth L. Felix (Defendants), and Robert Richardson (Relator) (hereafter collectively referred to as the Parties), through their authorized representatives.

RECITALS

A.      Defendant Innovasis is a privately held Utah corporation with its primary office located at 614 E. 3900 S., Salt Lake City, Utah 84107.  Innovasis manufactures, markets, and sells medical devices, equipment, and related products primarily used in spinal surgeries performed by orthopedic surgeons and neurosurgeons throughout the United States, including in the Northern District of Texas.

B.      Defendant Brent Felix resides Sandy, Utah.  Brent Felix founded Innovasis in 2002, and held various leadership roles in the company, including serving as Innovasis's President, Chief Executive Officer, and Chairman of the Board.  During the Relevant Period, Brent Felix, along with his brother Garth Felix, controlled or otherwise directed Innovasis's operations, strategic decisions, and agreements with its surgeon customers.

C.      Defendant Garth Felix is an individual with a primary residence in Mapleton, Utah.  During the Relevant Period, Garth Felix served in various leadership roles at Innovasis, including as its Chief Financial Officer.  Garth Felix, with his brother Brent Felix, controlled or otherwise directed Innovasis's operations.

D.      On October 15, 2019, Robert Richardson filed a *qui tam* action in the United States District Court for the Northern District of Texas, Dallas Division, captioned *United States*

*ex rel. Richardson v. Innovasis, Inc., et al.,* Civil Action No. 3:19-CV-02440-X (N.D. Tex. 2019), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). The United States intervened in the Civil Action on October 25, 2023.

E.      The United States contends that Defendants caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395lll (Medicare).

F.      The United States contends that it has certain civil claims against Defendants arising from the following alleged conduct during the period from January 1, 2014 through December 31, 2022, (hereinafter referred to as the Covered Conduct):

> The United States alleges that Defendants provided improper remuneration to the orthopedic surgeons and neurosurgeons listed in Attachment A (collectively, the Subject Physicians) to induce them to use Innovasis spinal implants, devices, and other equipment in medical procedures the Subject Physicians performed on Medicare beneficiaries, in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b).

> The improper remuneration paid to the Subject Physicians was provided in the form of consulting fees, intellectual property acquisition and licensing fees, registry payments, and performance shares in Innovasis, as well as travel to a luxury ski resort, lavish dinners, and holiday parties for surgeons, their office staff, and family members.

> Defendants paid Subject Physicians for consulting services at rates far in excess of fair market value or, in some cases, paid for work that was never actually performed. Defendants paid Subject Physicians far in excess of fair market value to acquire or license purported intellectual property that, in some cases, lacked supporting detail, such as product drawings or patent applications, for which Innovasis never obtained any valuation prior to purchase and thereafter never used for meaningful product development.

2

Further, Defendants paid Subject Physicians to participate in a device registry program, where the payment rates were tied to the Subject Physicians' use of Innovasis products in surgeries.

Each year, Defendants paid for Subject Physicians to attend an Innovasis conference held at a luxury resort in Deer Valley, Utah. In addition to paying for the Subject Physicians' cost of travel (including—for certain high volume Subject Physicians—first class airfare), lodging, and high-end meals at the conference, Defendants provided attendees with welcome gift baskets and Innovasis branded ski jackets.

Finally, Defendants regularly treated Subject Physicians to expensive dinners at high-end restaurants and even sponsored lavish holiday parties as a reward for their use of Innovasis products.

As a result of the foregoing, the Defendants violated the False Claims Act 31 U.S.C. §§ 3729(a)(1)(A)–(C) (FCA) by knowingly causing the presentment of false claims to Medicare that resulted from violations of the AKS.

G.      This Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded. Defendants deny the United States' allegations in Paragraph F.

H.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.      Defendants shall pay to the United States the sum of Twelve Million Dollars ($12,000,000.00), plus interest at a rate of 4% per annum from January 19, 2024, and continuing

3

until and including the final date of payment (the Settlement Amount) under the terms and conditions set forth in this Agreement. Defendants agree that they are jointly and severally liable for the Settlement Amount. Of the Settlement Amount, Six Million Dollars ($6,000,000.00) is restitution. Defendants shall pay the Settlement Amount by electronic funds transfer pursuant to written instructions to be provided by the United States Attorneys' Office for the Northern District of Texas, pursuant to the following schedule:

a. **Initial Payment**—within 30 days of the Effective Date;

    (i) Innovasis shall pay the sum of Six-Hundred and Twenty-Five Thousand Dollars ($625,000.00), plus accrued interest as set forth above, within 30 days of the Effective Date of this Agreement;

    (ii) Brent Felix shall pay the sum of Two Hundred and Fifty Thousand Dollars ($250,000.00), plus accrued interest as set forth above, within 30 days of the Effective Date of this Agreement; and

    (iii) Garth Felix shall pay the sum of One Hundred and Twenty-Five Thousand Dollars ($125,000.00), plus accrued interest as set forth above, within 30 days of the Effective Date of this Agreement.

b. **Second Payment**—within 210 days of the Effective Date;

    (i) Innovasis shall pay the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00), plus accrued interest as set forth above, within 210 days of the Effective Date of this Agreement.

c. **Third Payment**—within 270 days of the Effective Date; and

    (i) Innovasis shall pay the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00), plus accrued interest as set forth above, within 270 days of the Effective Date of this Agreement;

d. **Final Payment**—within 364 days of the Effective Date;

    (i) Innovasis shall pay the sum of Six Million Dollars ($6,000,000.00), plus accrued interest as set forth above, within 364 days of the Effective Date of this Agreement.

The Parties agree that the Settlement Amount may be prepaid, in whole or in part, without penalty or premium. If Innovasis or any of its affiliates is sold, merged, or transferred, or a significant portion of the assets of Innovasis, or of any of its affiliates is sold, merged, or

4

transferred into another non-affiliated entity, Defendants shall promptly notify the United States, and all remaining payments owed by Defendants pursuant to the Agreement shall be accelerated and become immediately due and payable.

2.        Conditioned upon the United States receiving the Settlement Payments, the United States agrees that it shall pay to Relator by electronic funds transfer 17.5% of each such payment received under the Agreement (Relator's Share) as soon as feasible after receipt of the payment.  No other Relator payments shall be made by the United States with respect to the matters covered by this Agreement.

3.        Subject to the exceptions in Paragraph 5 (concerning reserved claims) below, and subject to Paragraph 14 (concerning default) and Paragraph 15 (concerning bankruptcy) below, and upon the United States' receipt of the full payment of the Settlement Amount plus interest due under Paragraph 1, the United States releases Innovasis, Brent Felix, and Garth Felix, from any civil or administrative  monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801–3812; or the common law theories of payment by mistake and unjust enrichment.

4.        Subject to the exceptions in Paragraph 5 below, and subject to Paragraph 14 (concerning default), and Paragraph 15 (concerning bankruptcy) below, and upon the United States' receipt of the full payment of the Settlement Amount plus interest due under Paragraph 1, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the FCA, and from any claims, allegations, demands, actions or causes of action whatsoever, known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or under common law, and that they, their

5

heirs, successors, attorneys, agents, and assigns would otherwise have standing to bring, including, without limitation, any claim that the Relator asserted or could have asserted in their Civil Actions. All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release any claims Relators may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d).

5.     Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.    Any criminal liability;

    c.    Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive –exclusion from Federal health care programs;

    d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.    Any liability based upon obligations created by this Agreement; and

    f.    Except as explicitly stated in this Agreement, any liability of individuals.

6.     Relator, for himself and for his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.     Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

8.     Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

9.     In consideration of Relator's obligations set forth in this Agreement, Defendants, fully and finally release, waive and forever discharge the Relator and his heirs, successors, attorneys, agents, and assigns, individually and collectively, from any and all manner of claims, controversies, actions, demands, torts, damages, costs, attorneys' fees, moneys due on account, obligations, judgments or liabilities of any kind whatsoever in law or equity, arising out of agreement or imposed by statute, common law of otherwise, from beginning of time to the date this Agreement is signed, whether or not known now, anticipated, unanticipated, suspected or claimed, fixed or contingent, whether yet accrued or not, and whether damage has resulted from such or not.  All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release, waive or otherwise affect the ability of Defendants to challenge or object to Relator's claims for attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d).

7

10.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer, related to the Covered Conduct; and Innovasis agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11.     Defendants agree to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395–1395lll and 1396–1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the Settlement Payments Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such

8

Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

        c.      <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.    This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries) below.

13.    Each Defendant agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

14.    The Settlement Amount, and associated payment schedule set forth in Paragraph 1 above, represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct.

a.      In the event that Innovasis, Brent Felix, or Garth Felix, fail to pay any of the payments as provided in the payment schedule set forth in Paragraph 1 above, Defendants shall be in Default of the Defendants' payment obligations (Default).  The United States will provide a written Notice of Default, and Defendants shall have an opportunity to cure such Default within fourteen (14) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Agreement up to the date of payment.  Notice of Default will be delivered to Patric Hooper and Bridget Gordon, or to such other representative as Defendants designate in advance in writing.  If Defendants fail to cure the Default within fourteen (14) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule (Uncured Default), the remaining unpaid balance of the Settlement Amount shall

10

become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.      In the event of Uncured Default, Defendants agree that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against each or any of the Defendants—for the claims that would otherwise be covered by the releases provided in Paragraph 4 above, with any recovery reduced by the amount of any payments previously made by Defendants to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendants and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Defendants agree immediately to pay the United States the greater of (i) a 10% surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, Defendants each waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against any of the Defendants within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on October 15, 2019.

11

Defendants agree not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

c.      In the event of Uncured Default, OIG-HHS may exclude Defendants from participating in all Federal health care programs until Defendants pay the Settlement Amount, with interest, as set forth above (Exclusion for Default).  OIG-HHS will provide written notice of any such exclusion to Defendants.  Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7) and agree not to contest such exclusion either administratively or in any state or federal court.  Reinstatement to program participation is not automatic.  If at the end of the period of exclusion, Defendants wish to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001–.3005.  Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.  The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available to the United States.

15.     In exchange for valuable consideration provided in this Agreement, Defendants acknowledge the following:

a.      Defendants Innovasis, Brent Felix and Garth Felix have each reviewed their financial situation and warrant that each is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount and the associated payment schedule as set forth in Paragraph 1 above.

b.      In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and

12

the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.    The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.    The Parties do not intend to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.    If any of Defendants' payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, any Defendant or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of any Defendant's debts, or to adjudicate any Defendant as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for any Defendant or for all or any substantial part of any Defendant's assets:

(i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against any Defendant for the claims that would otherwise be covered by the releases provided in Paragraph 4 above;

(ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Defendants in the amount of at least Eighteen Million Dollars ($18,000,000.00) plus civil penalties of Twenty-Two Million Eight Hundred Ninety-Two Thousand Dollars ($22,892,000.00) less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the

13

United States by Defendants, a receiver, trustee, custodian, or other similar official for Defendants;

(iii) if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and

(iv) if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relator pursuant to Paragraph 2 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relator shall, within thirty (30) days of written notice from the United States to the undersigned Relator's counsel, return to the United States all amounts recovered from the United States.

f.      Defendants agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 15.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendants shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendants waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on October 15, 2019.

14

16.	Upon receipt of the Initial Payment described in Paragraph 1 of this Agreement, the United States and Relator shall promptly sign and file in the Civil Action a Notice of Dismissal of the Civil Action pursuant to Federal Rule of Civil Procedure 41(a)(1).

17.	Except for Relator's rights pursuant to 31 U.S.C. § 3730(d), each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18.	Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

19.	This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the District of Northern Texas, Dallas Division. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20.	This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

21.	The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22.	This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23.	This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

24.	This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

15

25.    All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES FOLLOW]

16

**THE UNITED STATES OF AMERICA**

DATED: 5/21/24     BY:_____
                   GEORGE M. PADIS
                   ANDREW S. ROBBINS
                   Assistant United States Attorneys
                   Northern District of Texas


DATED: _____     BY:_____
                       OLGA YEVTUKHOVA
                       JESSICA KRIEG
                       ADAM DICLEMENTE
                       Trial Attorneys
                       Commercial Litigation Branch
                       Civil Division
                       United States Department of Justice


DATED: _____     BY:_____
                       SUSAN E. GILLIN
                       Assistant Inspector General for Legal Affairs
                       Office of Counsel to the Inspector General
                       Office of Inspector General
                       U.S. Department of Health and Human Services

17

**THE UNITED STATES OF AMERICA**

DATED: _____    BY:_____
                          GEORGE M. PADIS
                          ANDREW S. ROBBINS
                          Assistant United States Attorneys
                          Northern District of Texas


DATED: 5/22/24    BY:_____
                          OLGA YEVTUKHOVA
                          JESSICA KRIEG
                          ADAM DICLEMENTE
                          Trial Attorneys
                          Commercial Litigation Branch
                          Civil Division
                          United States Department of Justice


DATED: _____    BY:_____
        L                 SUSAN E. GILLIN
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the Inspector General
                          Office of Inspector General
                          U.S. Department of Health and Human Services

17

**THE UNITED STATES OF AMERICA**


DATED: _____          BY:_____

                            GEORGE M. PADIS
                            ANDREW S. ROBBINS
                            Assistant United States Attorneys
                            Northern District of Texas



DATED: _____          BY:_____

                            OLGA YEVTUKHOVA
                            JESSICA KRIEG
                            ADAM DICLEMENTE
                            Trial Attorneys
                            Commercial Litigation Branch
                            Civil Division
                            United States Department of Justice



                            SUSAN      Digitally signed by SUSAN
                                       GILLIN
DATED: _05/21/24_    BY: _ GILLIN      Date: 2024.05.21 16:54:52
          L                            -04'00'
                            SUSAN E. GILLIN
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            U.S. Department of Health and Human Services

17

**INNOVASIS, INC.**

DATED: 5/20/24

BY: _____
BRENT A. FELIX
In his capacity as Chairman of the Board
Innovasis, Inc.

DATED: 5/20/24

BY: _____
GARTH L. FELIX
In his capacity as Chief Financial Officer
Innovasis, Inc.

DATED: _May 20, 2024_

BY: _____
PATRIC HOOPER
BRIDGET GORDON
Hooper, Lundy & Bookman, P.C.
Counsel for Innovasis, Inc.

18

**BRENT A. FELIX**

DATED: 5/20/24          BY: _____
                        BRENT A. FELIX
                        In his personal capacity


DATED:  May 20, 2024    BY: _____
                        PATRIC HOOPER
                        BRIDGET GORDON
                        Hooper, Lundy & Bookman, P.C.
                        Counsel for Brent A. Felix

19

**GARTH L. FELIX**

DATED: 5/20/24

BY: _____
GARTH L. FELIX
In his personal capacity


DATED: May 20, 2024

BY: _____
PATRIC HOOPER
BRIDGET GORDON
Hooper, Lundy & Bookman, P.C.
Counsel for Garth L. Felix

20

## RELATOR

DATED: 5-21-24                    BY: _Robert S. Richardson_
                                 ROBERT RICHARDSON
                                 Relator

DATED: 5/21/2024                 BY:_____
                                 NATHAN F. GARRETT
                                 Graves Garrett Greim LLC
                                 Counsel for Robert Richardson

21

## ATTACHMENT A

| No. | Surgeon | Practice Location |
|-----|---------|-------------------|
| 1 | ████████ (M.W.) | KS |
| 2 | ██████ (E.W.) | TX |
| 3 | ████████ (T.B.) | AL |
| 4 | ███████ (A.M.) | KS |
| 5 | ███████ (M.R.) | TX |
| 6 | ███████ (F.H.) | TX |
| 7 | ██████ (T.L.) | TX |
| 8 | ████████ (C.T.) | FL |
| 9 | █████████ (C.H.) | LA |
| 10 | █████ (C.T.) | AL |
| 11 | █████ (F.M.) | DC |
| 12 | ██████ (J.E.) | CT |
| 13 | ██████████ (M.W.) | TX |
| 14 | ██████ (R.D.) | TX |
| 15 | ███████ (S.K.) | DC |
| 16 | ████████ (S.T.) | TX |
| 17 | ███████ (C.B.) | LA |

22